USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 8, 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ALLOC, INC., BERRY FINANCE, N.V., and
VÄLINGE ALUMINUM AB,

         Plaintiffs,

  -against-

NORMAN D. LIFTON CO., BALTA U.S., INC.
and BALTERIO, N.V.,

         Defendants.
---------------------------------------------------------------x

03 Civ. 4419 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Alloc, Inc., Berry Finance, N.V., and Välinge Innovation AB[1] (collectively "Alloc") hold three related patents: U.S. Patent No. 6,516,579 (the "'579 Patent"), U.S. Patent No. 6,023,907 (the "'907 Patent"), and U.S. Reissued Patent No. RE39,439 (the "Re '439 Patent") (collectively the "Pervan Patents"). The Pervan Patents are part of a family of patents that describe a system of interlocking floor panels. Alloc brings this action against Defendants Norman D. Lifton Co., Balta U.S., Inc., and Balterio, N.V. (collectively "Balterio") because it claims that the "Click Xpress" floor panels manufactured and sold by Balterio infringe upon the Pervan Patents.

Balterio moves for summary judgment on four separate grounds. First, it argues that the Click Xpress floor panels do not, as a matter of law, infringe upon the Pervan Patents. Second, it contends that even if the Click Xpress panels do infringe upon the Pervan Patents, Alloc cannot demonstrate that this infringement was willful. Third, it claims that the '579 Patent and Re '439

---

[1] Välinge Innovation AB was previously known as Välinge Aluminum AB.  (See Pl. Response to Def. Local Rule 56.1 Statement of Material Facts on Non-Infringement ("Pl. 56.1 Non-Infringement") at 1.)

1

Patent are invalid. Finally, it alleges that the '579 Patent is unenforceable due to inequitable conduct on the part of Alloc's patent attorney and Välinge's president during the patent prosecution process.

For the following reasons, Balterio's second motion for summary judgment, on the issue of willful infringement, is GRANTED. Its first, third, and fourth motions for summary judgment—on the issues of non-infringement, invalidity, and unenforceability—are DENIED.

## BACKGROUND

Plaintiff Välinge, a Swedish corporation, is the assignee of the Pervan Patents. The Pervan Patents originated with a 1993 Swedish patent application made by Välinge, which in turn formed the basis for five U.S. patents, including the '579, '907, and Re '439 patents presently at issue. Plaintiff Berry, a Belgian corporation, is the exclusive licensee of the Pervan Patents, and Plaintiff Alloc is a U.S. affiliate of Berry and sub-licensee of the patents.

Defendant Balterio, a Belgian corporation, manufactures the Click Xpress floor panels that Alloc alleges infringe upon the Pervan Patents. Defendants Norman D. Lifton Co. and Balta are U.S. corporations that sell Click Xpress panels in the U.S.

The present case is one in a series of actions brought by Alloc against various defendants since 2000, alleging infringement of the Pervan Patents. (See Transcript of Oral Argument on Feb. 2, 2009 ("OA Tr.") at 72:23-73:4.) Alloc filed its original Complaint on June 18, 2003 and filed an Amended Complaint on May 10, 2006.

On July 18, 2007, pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996), the Court issued an Opinion & Order on Claim Construction construing the meaning of the relevant claim language in the Pervan Patents.[2] Alloc, Inc. v. Norman D. Lifton Co., No. 03

---

[2] "A patent infringement analysis involves two steps: claim construction and application of the properly construed claim to the accused product." KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1355 (Fed. Cir. 2000). With

Civ. 4419 (PAC), 2007 WL 2089303 (S.D.N.Y. July 18, 2007). The Court adopted the findings made by the United States Court of Appeals for the Federal Circuit in Alloc, Inc. v. International Trade Commission, 342 F.3d 1361 (Fed. Cir. 2003), which considered some of the same claim construction issues raised in the present matter.[3] See Alloc, 2007 WL 2089303, at *6, *11. Specifically, the Court adopted the Federal Circuit's definition of the term "play" as "a space between a locking groove on a first panel and the locking element of a panel adjacent to the first panel." See id. at *6. It further agreed with the Federal Circuit that all of the patents in the Pervan family incorporated the element of "play" into their designs, i.e. they all described a space between the locking element and locking groove. Id. at *11.

Following the Court's ruling on claim construction, Balterio filed its present motions for summary judgment on March 28, 2008.

## DISCUSSION

### I. Standard of Review for a Motion for Summary Judgment

The standard of review for a motion for summary judgment in a patent infringement case is the same as in any other type of action. See Union Carbide Corp. v. Am. Can Co., 724 F.2d 1567, 1571 (Fed. Cir. 1984). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

---

respect to the first step, Markman teaches that it is the court's, rather than a jury's, responsibility to interpret disputed claim language. See 517 U.S. at 384-91. The Court held a hearing on claim construction on November 29, 2006 and issued its Opinion & Order shortly thereafter.

[3] The Federal Circuit's decision upheld two determinations by the International Trade Commission ("ITC") that the accused infringers in those matters had not infringed upon Alloc's interlocking floorboard patents. 342 F.3d at 1364-65. The Federal Circuit's decision was highly relevant to this Court's claim construction because the Alloc patents before the Federal Circuit were the '907 Patent at issue in the present matter and related patents within the Pervan family. See id. at 1365-67.

248 (1986).  But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

The moving party initially bears the burden of demonstrating that no genuine issues of material fact remain.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once this showing is made, the non-moving party may not rely solely on "[c]onclusory allegations, conjecture, and speculation," but must present specific facts demonstrating that there is a genuine issue for trial.  Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citations and internal quotation marks omitted); see also Fed. R. Civ. P. 56(e)(2).  The Court resolves all ambiguities and draws all factual inferences in favor of the non-moving party, but "only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)).

**II.     Non-Infringement**

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly."  Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995).  This Court has defined play and has concluded that the element of play is found in each of the Pervan Patents.  Consequently, if Balterio's Click Xpress panels do not contain play, they cannot infringe upon the Pervan Patents.

Accordingly, Balterio moves for summary judgment on the issue of non-infringement by arguing that its Click Xpress panels do not contain play as that term has been defined by the Court.  (See Def. Mem. in Support of Summ. J. on Non-Infringement ("Def. Mem. Non-Infringement") at 13-21.)  On the record before it, however, the Court cannot conclude as a matter of law that Balterio's floor panels do not infringe on Alloc's patents.

Patent infringement suits are typically "inappropriate for summary disposition." Union Carbide, 724 F.2d at 1571; see also Southwall Techs., 54 F.3d at 1575 ("Infringement…is an issue of fact.") The parties' submissions on this motion consist almost entirely of factual allegations and are practically barren of citations to any legal authorities that would support judgment as a matter of law. (See Def. Mem. Non-Infringement at 13-21; Pl. Opp. to Summ. J. on Non-Infringement ("Pl. Opp. Non-Infringement") at 4-18.)

The question of infringement clearly boils down to a battle between Balterio's expert, Dr. Albert DeBonis, who claims that the Click Xpress panels do not contain play (see Def. Mem. Non-Infringement at 16), and Alloc's expert, Dr. Robert Rice, who claims to have found play in the panels. (See Pl. Opp. Non-Infringement at 9-17.)[4] Both sides vigorously dispute the methods and conclusions of the other side's expert—Balterio claims that Dr. Rice used an erroneous definition of play and improperly altered the Click Xpress floor panels to obtain his results, while Alloc argues that Dr. DeBonis failed to test any of the products at issue in the case.

---

[4] In addition to relying on the findings of Dr. DeBonis, Balterio also argues that it is entitled to summary judgment on the issue of non-infringement because: (1) in designing the Click Xpress panels, it used an expired patent known as the Terbrack Patent that the parties agree does not contain play; and (2) it followed stringent quality control procedures to ensure that the Click Xpress panels conformed to their no-play design. (Def. Mem. Non-Infringement at 7-12.) These arguments do not support judgment as a matter of law but rather are factual contentions that Balterio must put to a jury. The Court rejects, however, Alloc's claim that Balterio's reliance on the Terbrack Patent constitutes an impermissible "practicing the prior art" defense. (See Pl. Opp. Non-Infringement at 4-5.) "Practicing the prior art" defenses are impermissible where the defendant uses such an argument to demonstrate invalidity, i.e. that the plaintiff's patent was anticipated or non-obvious, as a backdoor route to proving non-infringement. See Koito Mfg. Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1153 (Fed. Cir. 2004) ("[T]his court has made clear that there is no "practicing the prior art" defense to literal infringement….We therefore reject Koito's evidence of anticipation with respect to the prior art automobile lenses.") (emphasis added); Tate Access Floors, Inc. v. Interface Architectural Resources, Inc., 279 F.3d 1357, 1367 (Fed. Cir. 2002) (holding that "accused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a "practicing prior art" defense to literal infringement…") (emphasis added); Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1583 (Fed. Cir. 1995) ("Implicit in Spectramed's [practicing the prior art] argument is that Baxter, in order to establish literal infringement, must prove by a preponderance of the evidence that Spectramed's…accused devices must not be an adoption of the combined teachings of the prior art. This is not a correct statement of the law governing patent infringement. There is no requirement that the accused device be nonobvious in light of the prior art, or otherwise be itself patentable.") (emphasis added). Here, Balterio does not use the Terbrack Patent to demonstrate the Pervan Patents' invalidity; rather, it uses the Terbrack Patent's "prior art" to "support[] [its] defense of no infringement" by suggesting that the Click Xpress panels, by design, do not contain play. (Def. Reply in Support of Summ. J. on Non-Infringement ("Def. Reply Non-Infringement") at 2 n.2.) The issue of whether and to what extent the Terbrack Patent supports Balterio's position is therefore a fact question for the jury.

(See Def. Mem. Non-Infringement at 13-21; Pl. Opp. Non-Infringement at 6-8.)  At oral argument, each party expended considerable time and energy attempting to convince the Court that its expert's methods and conclusions were superior to the methods used and conclusions reached by the other side's expert.  (See O.A. Tr. at 7:17-19:16.)  That time and energy should be expended attempting to convince a jury.  This case involves numerous disputes over complex issues of material fact that go to the heart of Alloc's infringement claims and Balterio's defenses.  Balterio's motion for summary judgment on non-infringement is therefore denied.

**III.    No Willful Infringement**

In In re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007), the Federal Circuit announced a heightened standard for establishing willful infringement.  The Seagate court established a two-prong test for demonstrating willfulness.  First, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  Id. at 1371.  If that initial threshold is met, "the patentee must also demonstrate that this objectively-defined risk…was either known or so obvious that it should have been known to the accused infringer."  Id.

Balterio argues that it is entitled to summary judgment on the issue of willfulness because the undisputed factual record demonstrates that it sought to design around the Pervan Patents by excluding the element of play from its Click Xpress panels.  (Def. Mem. in Support of Summ. J. on Wilfulness ("Def. Mem. Willfulness") at 4.)  By the time Balterio began to design the Click Xpress panels, the International Trade Commission ("ITC") had determined that the Pervan Patents all include play.  (Id.)  Balterio used the expired Terbrack Patent, which was in the public domain and which did not include play, as the basis for its design.  (Id. at 6-8.)  Finally, Balterio

6

instituted "rigorous quality control measures" to ensure that the Click Xpress panels conformed to the no-play design.  (Id. at 5.)

Alloc raises no genuine issues of material fact that cast doubt upon Balterio's argument that it took reasonable steps to avoid infringing on the Pervan Patents.  Its opposition papers present "factual disputes" which speak to the issue of whether or not the Click Xpress panels infringe upon the Pervan Patents, but which fail to suggest that such infringement, if proven, was willful.[5]  On the other hand, Alloc makes several factual admissions that support Balterio's motion.  For example, Alloc admits that the Terbrack Patent does not contain play.  (Pl. Response to Def. Local Rule 56.1 Statement of Material Facts on Non-Infringement ("Pl. 56.1 Non-Infringement") ¶ 24.)  Alloc also agrees that Balterio "used a rigorous set of Quality Control procedures to ensure that the panels were manufactured according to the specifications illustrated above.  To do so, Balterio [] instituted quality control standards that were stricter than the European standards for testing of laminate floor coverings."  (Id. ¶ 30.)  These admissions severely compromise Alloc's ability to argue convincingly that Balterio acted despite an objectively high likelihood that its products would infringe upon the Pervan Patents, and that in manufacturing and selling the Click Xpress panels it acted recklessly in the face of a known risk.

At oral argument, Alloc offered three additional arguments in opposition to Balterio's motion.  None of these arguments have merit.  First, Alloc claimed that Balterio is not entitled to summary judgment because its quality control procedures were insufficient to ensure that the Click Xpress panels did not include play.  (OA Tr. at 24:14-19.)  The case law is clear, however,

---

[5] First, Alloc again claims that Balterio's reliance on the Terbrack Patent amounts to a "practicing the prior art" defense. (Pl. Opp. to Summ. J. on Willfulness (Pl. Opp. Willfulness") at 3-4.) Second, it questions the relevance of the ITC's determination that the Pervan Patents include play. (Id. at 4.) Third, Alloc notes that there is a dispute over whether the Click Xpress panels include play, as evidenced by the conflicting expert reports of Dr. Rice and Dr. DeBonis. (Id. at 4-5.) Fourth, it disputes Balterio's claim that the Pervan Patents "can only be infringed by a locking system with play." (Id. at 5.) Finally, Alloc argues that Dr. Rice's report constitutes credible evidence that the Click Xpress panels have play as that term has been defined by the Court. (Id. at 5-6.)

7

that an accused infringer does not act willfully merely because its reasonable attempts to avoid infringement are unsuccessful.  See ResQNet.com, Inc. v. Lansa, Inc., 533 F. Supp. 2d 397, 420 (S.D.N.Y. 2008) (finding no willful infringement where the defendant's asserted defenses, though unsuccessful, were "substantial, reasonable, and far from the sort of easily-dismissed claims that an objectively reckless infringer would be forced to rely upon").  Second, they suggested, for the first time, that Balterio copied Alloc's '907 patent.  (OA Tr. at 24:20-25:1.)  Because nothing in either the Amended Complaint or in Alloc's briefing papers even hints at this allegation, the Court rejects it as a basis for denying Balterio's motion.  Finally, Alloc asked the Court to consider the fact that Balterio never obtained an opinion from legal counsel stating that its Click Xpress panels did not infringe on other patents.  (Id. at 26:15-19.)  The Seagate court, however, did away with this requirement by holding that "there is no affirmative obligation to obtain opinion of counsel."  497 F.3d at 1371.

Balterio sets forth a valid defense, supported by undisputed facts, that it took reasonable steps to design around the Pervan Patents and avoid infringement.  Alloc, by contrast, fails to present any fact suggesting that if Balterio infringed on Alloc's patents, it did so willfully under the Seagate test.  Balterio's motion for summary judgment is therefore granted.

**IV.   Invalidity of '579 and Re '439 Patents**

Patent claims are invalid, and therefore cannot be infringed upon, if they are either "anticipated" or "obvious."  A patent claim is anticipated if every element of the claim is disclosed in a prior art reference.  35 U.S.C. § 102(a); see also Xerox Corp. v. 3Com Corp., 458 F.3d 1310, 1322 (Fed. Cir. 2006) ("[I]nvalidity by anticipation requires that the four corners of a

single, prior art document describe every element of the claimed invention….." (citation and internal quotation marks omitted)); Kartsen Mfg. Corp. v. Cleveland Golf Co., 242 F.3d 1376, 1383 (Fed. Cir. 2001) ("Invalidity on the ground of 'anticipation' requires lack of novelty of the invention as claimed….[A]ll of the elements and limitations of the claim must be shown in a single prior reference, arranged as in the claim.").

A patent claim is obvious if the differences between it and claims contained in prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). A court's obviousness inquiry should be guided by four factors: (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill contained in the prior art; and (4) "secondary considerations" that "give light to the circumstances surrounding the origin of the subject matter sought to be patented." KSR International Co. v. Teleflex Inc., 550 U.S. 398, 406 (2007) (quoting Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966)). In KSR, the Supreme Court rejected a "rigid" definition of obviousness in favor of an "expansive and flexible approach." Id. at 415. It identified several grounds upon which a finding of obviousness could be based, including that the claim: (1) is an ordinary advance in the art; (2) is an obvious solution to a known problem; (3) was obvious to try; (4) is a predictable variation on existing work; (5) reflects a technique previously used to improve a similar product or system; or (5) is a combination of familiar elements. See id. at 414-22.

Balterio claims that Alloc's '579 and Re '439 Patents are invalid in light of two previous patents, the Wilson Patent and the Baker Patent. Balterio alleges that the Wilson Patent—which, like the Pervan Patents, describes a mechanical locking system for floor panels—anticipates

9

Claims 10, 13, 14, 22, 23, 25, 26, and 27 of the '579 Patent; renders obvious Claim 15 of the '579 Patent; and anticipates Claims 21, 33, 34, 37, and 42 of the '439 Patent. (See Def. Mem. in Support of Summ. J. on Invalidity ("Def. Mem. Invalidity") at 5-18, Ex. A.) It further alleges that the Baker Patent, which also describes a locking system for floor panels, anticipates Claims 10, 13, 14 and 15 of the '579 Patent; renders obvious Claims 22, 23, 25, 26, and 27 of the '579 Patent; anticipates Claims 21, 33, 37, and 42 of the '439 Patent; and renders obvious Claim 34 of the '439 Patent. (Id. at 18-24, Ex. B.)

To obtain summary judgment, Baltero must present "such clear and convincing evidence of invalidity…that no reasonable jury could find otherwise." Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). In fact, Balterio's burden is arguably even higher because it is "go[ing] over the same ground" as the U.S. Patent and Trademark Office ("PTO"), which examined both the Wilson and Baker Patents prior to issuing the '579 and Re '439 Patents. See PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1304 (Fed. Cir. 2008) (quoting Hoist & Derrick Co. v. Sowa & Sons, 725 F.2d 1350, 1360 (Fed. Cir. 1984)). As the PowerOasis court explained:

> When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

PowerOasis, 522 F.3d at 1304 (quoting Hoist & Derrick, 725 F.2d at 1359). Furthermore, as Alloc explains, "[b]ecause the '439 patent was not only initially examined, but [] was reexamined and reissued, the burden on Balterio with respect to the '439 patent could hardly be any higher." (Pl. Opp. to Summ. J. on Invalidity ("Pl. Opp. Invalidity") at 2.)

10

The record before the Court indicates that Balterio has failed to carry its heavy burden for obtaining summary judgment on the issue of invalidity. A court should not grant summary judgment on invalidity where the parties present reasonable alternative arguments as to the correct interpretation of the prior art. See Cooper v. Ford Motor Co., 748 F.2d 677, 679-80 (Fed. Cir. 1984). In its papers and at oral argument, Alloc has advanced reasonable interpretations of the Wilson and Baker Patents that, if accepted by a rational trier of fact, would defeat Balterio's invalidity defense to infringement. For example, Alloc contends that the Wilson Patent does not describe locking elements on the edges of the panels—a signature feature of the Pervan Patents—but rather describes locking elements located underneath the panels. (Pl. Opp. Invalidity at 5-7.) Balterio attempts to refute this argument by citing to the claims and artwork for the Wilson Patent and explaining why its interpretation is more credible than Alloc's. (See Def. Reply in Support of Summ. J. on Invalidity ("Def. Reply Invalidity") at 3-4 (citing to the Declaration of Anthony A. Pastor ("Pastor Decl.") Ex. 29).) Balterio's arguments may indeed be correct, but they are not the stuff of summary judgment. They are factual contentions, and the question of their validity vis-à-vis Alloc's contentions must be put to a jury.

Summary judgment on invalidity is also inappropriate where there is a conflict of opinion between experts. See Hodosh v. Block Drug Co., 786 F.2d 1136, 1143 (Fed. Cir. 1986). The Court has already described, in reference to Balterio's motion for summary judgment on non-infringement, the considerable disputes between Dr. DeBonis and Dr. Rice. (See supra Part II.) Not surprisingly, these two experts also dispute whether the '579 and Re '439 Patents are invalid in light of the Wilson and Baker Patents. (Compare Pastor Decl. Ex. 11 ("Expert Report of Dr. Albert L. DeBonis on Invalidity of Asserted Claims") with Declaration of Daniel J. O'Connor ("O'Connor Decl.") Ex. 1 ("Declaration of Dr. Robert W. Rice"), Ex. 2 ("Rebuttal Expert Report

of Dr. Robert W. Rice").) "The fact issues herein must be resolved by trial in which the conflicting views of the experts will be subject to the refining fire of cross examination, a more effective means of arriving at the legal conclusion of obviousness vel non than perusal of ex parte affidavits and declarations of partisan experts lobbed at each other from opposing trenches." Hodosh, 786 F.2d at 1143.

Finally, the Court places significant stock in the fact that both the Wilson and Baker Patents were before the patent examiner, who nonetheless decided, in good faith and drawing on her expertise, to issue the '579 and Re '439 Patents. The Court does not credit Balterio's contention, made at oral argument, that the patent examiner's determinations are inconsequential because Alloc submitted "literally hundreds of prior art references to the patent examiner" when prosecuting the '579 and Re '439 Patents, meaning that the patent examiner "didn't have a chance to review each and every reference." (See OA Tr. at 43:20-44:18.) First, this is pure conjecture—Balterio has no way of knowing what materials the patent examiner reviewed and what weight those materials were given in her decisions. Second, Balterio cannot obtain summary judgment merely by suggesting that the patent examiner paid insufficient attention to a particular prior art reference. Instead, PowerOasis teaches that the party attacking the patent's validity must demonstrate "that the PTO was wrong in its decision to grant the patent." 522 F.3d at 1304 (citation and internal quotation marks omitted). For each of the foregoing reasons, Balterio has failed to meet this standard and its motion for summary judgment on invalidity is consequently denied.

**V.     Unenforceability of '579 Patent Due to Inequitable Conduct**

Individuals associated with the filing of a patent claim owe a duty of candor to the PTO. 37 C.F.R. § 1.56(a); Li Second Family Ltd. P'ship v. Toshiba Corp., 231 F.3d 1373, 1378 (Fed.

Cir. 2000) ("Applicants for patents have a duty to prosecute patent applications in the PTO with candor, good faith, and honesty."). This includes inventors, attorneys, and "[e]very other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application." 37 C.F.R. § 1.56(c). A breach of this duty constitutes inequitable conduct. See Li Second Family, 231 F.3d at 1378.

In order to demonstrate inequitable conduct, the moving party must show (1) a failure to disclose material information; coupled with (2) an intent to deceive or mislead the PTO. Id. Both of these prongs must be shown by "clear and convincing" evidence. Id. Information is material if there is a "substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." Id. at 1379-80 (citation and internal quotation marks omitted). Intent to deceive need not be proven through direct evidence—it may be inferred by surrounding circumstances. Molins PLC v. Textron, Inc., 48 F.3d 1172, 1180-81 (Fed. Cir. 1995).

"Once the thresholds of materiality and intent have been established, the court conducts a balancing test and determines whether the scales tile to a conclusion that 'inequitable conduct' occurred." Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1256 (Fed. Cir. 1997). "The more material the information misrepresented or withheld by the applicant, the less evidence of intent will be required in order to find that inequitable conduct has occurred." Li Second Family, 231 F.3d at 1378. If a court finds inequitable conduct relating to the prosecution of a patent, all claims in that patent are rendered unenforceable. See Baxter Int'l v. McGaw, Inc., 149 F.3d 1321, 1327 (Fed. Cir. 1998).

In its final motion for summary judgment, Balterio argues that the '579 Patent is unenforceable because Alloc's patent attorney, William Rowland, and Välinge's president, Darko Pervan, engaged in inequitable conduct during the patent prosecution process. Specifically, they contend that Rowland and Pervan failed to disclose to the examiner of the '579 Patent the fact that the ITC, in its November 2001 and April 2002 determinations, held that all patents in the Pervan family contained play. (Def. Mem. in Support of Summ. J. on Unenforceability ("Def. Mem. Unenforceability") at 11-12.)  Nonetheless, in prosecuting the '579 Patent, Rowland submitted claims to the PTO that did not contain a play limitation and subsequently made arguments in support of those claims. (Id. at 13-15.)  Balterio further contends that Rowland and Pervan acted with intent to deceive the PTO and obtain patents without a play limitation. (Id. at 16-21.)  In support of this theory, Balterio relies heavily on the minutes of a meeting between Rowland and Pervan in 2002, during which the two men allegedly formulated an "action plan" to address the "play problem," i.e. to determine how Alloc could circumvent the play limitation in its future patents. (See Declaration of David S. Chun ("Chun Decl.") Ex. 3.)

"Although it is not impermissible to grant summary judgment" on the issue of inequitable conduct, courts have "'urg[ed] caution' in making an inequitable conduct determination at the summary judgment stage." M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., 439 F.3d 1335, 1340 (Fed. Cir. 2006).  Proceeding cautiously, and in light of the record before it, the Court finds that summary judgment is inappropriate in the present matter.  The Court is willing to accept that the ITC determinations would be material to the decision-making process of a reasonable patent examiner faced with the '579 Patent.  The fact that the Pervan Patents were all held to have a play limitation would be useful to a patent examiner faced with an application that

14

did not contain play.[6]  Yet Balterio fails to couple the materiality of the ITC determinations with evidence of deceptive intent sufficient to entitle it to judgment as a matter of law.  "Given the ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required."  Northern Telecom, Inc. v. Datapoint Corp., 908 F.2d 931, 939 (Fed. Cir. 1990).

Both in its papers and at oral argument, Balterio relies heavily on evidence of the meeting between Rowland and Pervan in Sweden to demonstrate intent.  (See Def. Mem. Unenforceability at 18-19; OA Tr. at 65:8-67:3.)  Yet just because Alloc sought to obtain a patent without play does not necessarily mean that its patent attorney and Välinge's president were willing to go to extremes to obtain it.  Balterio simply cannot demonstrate the high level of intent necessary for the Court to hold, as a matter of law, that a well-respected patent attorney risked his career and his good name attempting to mislead a patent examiner as to the presence or absence of a miniscule amount of space between a locking groove and a locking element.  Balterio's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, Balterio's motion for summary judgment on the issue of willfulness is GRANTED.  Its motions for summary judgment on the issues of non-infringement, invalidity, and unenforceability are DENIED.  The Clerk of the Court is directed to enter judgment and terminate these motions.  The parties should meet and confer regarding pre-trial

---

[6] With respect to materiality, Alloc argues that information about the play limitation was included in a letter from the European Patent Office ("EPO") that both parties agree was submitted to the examiner during the '579 Patent prosecution.  (See Pl. Opp. to Summ. J. on Unenforceability ("Pl. Opp. Unenforceability") at 2-3, 16-17; Declaration of David I. Roche ("Roche Decl.") Ex. 20.)  "[A] reference need not be provided to the examiner if it is merely cumulative to or less material than other references before the examiner."  See Upjohn Co. v. Mova Pharm. Corp., 225 F.3d 1306, 1312 (Fed. Cir. 2000).  Whether and to what extent the EPO letter merely duplicates the type of information included in the ITC determinations is a question of fact for the jury.  For the time being, however, it does raise questions of materiality that further render summary judgment inappropriate.

matters and should contact the Court no later than September 28, 2009 to schedule a pre-trial conference.

Dated: New York, New York
       September 8, 2009

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge